LAW OFFICE OF
**PETER A. ROMERO**

Peter A. Romero
promero@romerolawny.com

David D. Barnhorn
dbarnhorn@romerolawny.com

June 17, 2019

<u>Via ECF</u>
Hon. Steven L. Tiscione
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   *Isaias Adonay Santamaria v. Westbury, LLC, et al*.
             <u>Docket No.: 18-cv-07047 (DLI) (ST)</u>

Dear Judge Tiscione:

      This firm represents the Plaintiff, Isaias Adonay Santamaria, in this action, which asserts claims against Defendants Westbury, LLC, Memet Arslan and Mustafa Alkan, his former employers. In his Complaint, Plaintiff brings claims for unpaid overtime wages under the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"), unpaid minimum wages under the NYLL, unpaid spread of hours compensation under the NYLL, failure to provide a wage notice pursuant to NYLL § 195(1), and failure to issue accurate wage statements pursuant to NYLL § 195(3). D.E. 1. Plaintiff and Defendants Westbury, LLC and Memet Arslan (hereinafter "Settling Defendants") (Plaintiff and Settling Defendants together as the "parties") have reached a resolution of this action. Accordingly, Plaintiff now submits this joint motion for approval, pursuant to <u>Cheeks v. Freeport Pancake House, Inc.</u>, 796 F.3d 199 (2d Cir. 2015), to respectfully request that the Court approve the terms of the parties' settlement agreement with respect to Plaintiff's FLSA claims.[1] A copy of the parties' settlement agreement is attached hereto as Exhibit A.

### Procedural History

      On December 11, 2018, Plaintiff filed his Complaint. D.E. 1. On January 31, 2019, Defendants Westbury, LLC and Memet Arslan filed an Answer to the Complaint. D.E. 6. On March 5, 2019, Plaintiff filed a request for a Certificate of Default noting the default of Defendant Mustafa Alkan. D.E. 11. On March 6, 2019, the Court entered a Certificate of Default against Defendant Alkan.[2] D.E. 12.

---

[1] The parties do not seek the Court's approval with respect to the settlement of Plaintiff's non-FLSA claims as there is no requirement for the Court to do so.
[2] Plaintiff has separately submitted a notice of dismissal of this action without prejudice, pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), as against Defendant Alkan. D.E. 16.

LAW OFFICE OF PETER A. ROMERO PLLC   ·   LABOR AND EMPLOYMENT LITIGATION
825 Veterans Hwy, Hauppauge, New York 11788   ·   (631) 257-5588   ·   overtimelawny.com

On March 7, 2019, the Court referred this matter to mediation before the EDNY mediation panel. Prior to mediation, the parties exchanged document discovery pertaining to the Plaintiff's claims. On May 6, 2019, the parties engaged in a successful mediation before EDNY panel mediator Raymond Nardo, Esq. Following the parties' contentious, arms-length negotiations, the parties were able to reach a resolution of this action at that mediation. The settlement agreement between the Plaintiff and the Settling Defendants provides for payment of a sum of $45,000.00, inclusive of attorneys' fees and costs. Pursuant to the settlement, Plaintiff will receive $28,943.33 and Plaintiff's counsel will receive a total sum of $16,056.67, consisting of $14,471.67 for attorneys' fees (i.e. 1/3 of the net settlement amount after deducting costs from the gross settlement amount) and $1,585.00 for costs. The settlement is secured by confessions of judgment signed by all Settling Defendants in the event of a default.

### The Court Should Approve the Settlement Agreement as Fair and Reasonable

FLSA claims may be dismissed with prejudice under Fed. R. Civ. P. 41 if they are approved by the Court. Cheeks, 796 F.3d at 206-207. "Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve bona fide disputes." Hernandez v. Merrill Lynch & Co., 2013 WL 1209563, at *7 (S.D.N.Y. Mar. 21, 2013) (citations omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." Id. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." Id.

In evaluating a proposed settlement of FLSA claims, courts in this Circuit typically apply the five-factor test articulated in Wolinsky v. Scholastic, Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). The Wolinsky factors require consideration of the following factors: (1) the Plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion. Id.

In this case, Plaintiff contends that he worked for Defendants as a non-exempt kitchen employee who was responsible for cooking and preparing food from in or about 2009 through in or about November 2018. Plaintiff alleges that he regularly worked six days per week from 11:00 a.m. to 10:00 p.m., often without receiving an uninterrupted thirty-minute meal period. For this work, Plaintiff contends that he was paid a daily rate of pay of between $100.00 to $150.00 per day during the relevant FLSA statutory period, regardless of his number of hours worked. Thus, Plaintiff asserts that he was not paid overtime compensation at time and one-half his regular rates of pay for each hour worked in excess of 40 per week under the FLSA.

Critically, the parties have several key disputes that impact the amount of recovery and liability in this lawsuit. Defendants dispute the number of hours worked by Plaintiff. Defendants also contend that Plaintiff was paid properly for all hours worked under the FLSA. In support of this position, Defendants have produced compensation records for certain periods of Plaintiff's employment, which would create challenges for Plaintiff to overcome at trial with respect to his hours worked and compensation paid. However, Plaintiff alleges that Defendants' records are inaccurate. Furthermore, Defendants challenge the manner of

assessing Plaintiff's damages, even if he were successful at trial. Defendants also deny that Plaintiff is entitled to liquidated damages under the FLSA, even if Plaintiff were successful at trial. Thus, the parties' respective positions evince substantial risks for both parties at trial which could impact the amount of Plaintiff's recovery and could result is a loss at trial by either party. Additionally, Defendants assert, and Plaintiff's counsel verified to the extent possible, that Defendants have limited financial resources and likely cannot afford a greater settlement or judgment.

Plaintiff has calculated his precise damages, based on the discovery in this matter and his anticipated testimony were this matter to proceed, in order to assess his best possible recovery in this litigation. Making all reasonable assumptions in his favor, Plaintiff's best potential recovery under the FLSA at trial amounts to $30,696.25 for unpaid FLSA wages and $30,696.25 for FLSA liquidated damages.

Settling at this stage allows the parties to avoid substantial costs and delays. Indeed, were a settlement not reached at this stage, the parties would have engaged in full formal written and document discovery, depositions of Plaintiff, Defendants, and likely several non-party witnesses. This settlement also avoids potential partial summary judgment motion practice by either party and trial, which would result in a months' or years' long delay to obtaining a recovery for the Plaintiff even if he is successful at trial, and potentially face future appeals. Moreover, all parties face the risk of losing at trial, either in whole or in part. Indeed, if Plaintiff was to succeed on liability but Defendants could prove that they made a good faith effort to comply with the FLSA, Plaintiff would not be entitled to liquidated damages under the FLSA, reducing Plaintiff's available FLSA damages by half to $30,696.25. This would be reduced further should Plaintiff not prevail on the issue of willfulness as the FLSA statute of limitations would be reduced to two, rather than three, years. This would reduce Plaintiff's unpaid FLSA overtime compensation to just $11,196.25. Thus, by settling at this stage, Plaintiff ensures that he will receive a recovery in this matter. Further, Plaintiff's award under the settlement permits him to recover nearly all of his unpaid FLSA overtime compensation, even after deducting for costs and attorneys' fees.

Additionally, the United States Department of Labor (hereinafter "US DOL") has conducted an investigation of the corporate defendant's compensation practices during a period that includes at least part of the same time period covered by this lawsuit. Thereafter, the US DOL reached a settlement that that included Plaintiff, among other employees. Under the US DOL settlement, Plaintiff will receive $7,265.00. Under the Agreement in this lawsuit, the parties explicitly agree that Plaintiff shall be permitted to retain the $7,265.00 he is being awarded under the US DOL settlement in addition to the funds awarded under the parties' Agreement in this lawsuit. Absent this Agreement, Defendants would likely have challenged Plaintiff's entitlement to certain damages under the FLSA for those periods covered by the US DOL settlement, creating further uncertainty regarding the amount that Plaintiff would have received at trial.

Accordingly, although there is a possibility that Plaintiff could recover higher damages if the case proceeded to trial, there is also the possibility that he could receive much lower damages, or nothing at all, and as such, the risks and uncertainties discussed above are substantial. Moreover, Defendants' claimed financial circumstances may make it difficult to collect a higher judgment, even if one were achieved, which could leave Plaintiff with

nothing. Thus, assuming this settlement is approved, Plaintiff will be able to recover the settlement funds more expeditiously, and with more certainty, than a trial judgment.

Additionally, the settlement here was reached only after the parties engaged in document discovery pertaining to the Plaintiff, providing them with a clear assessment of their available damages, contentious, arms'-length settlement discussions, and mediation with the assistance of an experienced mediator. Indeed, the presence of a mediator "provides assurance that the settlement was not the product of collusion." Bilbao v. LCS Enters. Inc., 2018 WL 1399199, at *2 (S.D.N.Y. Mar. 19, 2018); see also Hernandez v. Anjost Corp., 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("The assistance of an experienced mediator . . . reinforces that the Settlement Agreement is non-collusive."); Morris v. Affinity Health Plan, Inc., 859 F. Supp. 2d 611, 618-619 (S.D.N.Y. 2012) (citing In re Giant Interactive Grp., Inc. Sec. Litig., 279 F.R.D. 151, 159-160 (S.D.N.Y. 2011)) (explaining parties entitled to a presumption of fairness where mediator facilitated arms-length settlement). Accordingly, the settlement achieved clearly reflects an arms'-length negotiation absent from fraud or collusion and is a reasonable compromise over the contested issues in this matter.

Furthermore, the settlement agreement does not contain any terms that would militate against the Court approving it. For instance, the release in the Settlement Agreement is limited to the wage-related claims that Plaintiff asserted in this action. The release does not fall into the category of releases that are so broad and encompassing as to be rejected because they run afoul of standards of fairness and reasonableness. See Flood v. Carlson Rests. Inc., 2015 WL 4111668, at *1-2 (S.D.N.Y. July 6, 2015); Lopez v. Nights of Cabiria, LLC, 96 F. Supp. 3d 170, 181 (S.D.N.Y. March 30, 2015) (prohibiting releases that "purport to waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues" but notes additional claims may be released in appropriate circumstances); Cheeks, 796 F.3d at 206 (noting judicial approval of settlements is necessary to avoid an "overbroad release" that waives all possible claims and to prevent potential abuse or overreach in settlements). Here, the release is narrowly tailored to release only claims relevant to the instant action and those relevant to the parties' settlement negotiations. Likewise, the agreement does not contain a confidentiality clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." Flood, 2015 WL 4111668, at *1 (citing Lopez, 96 F. Supp. 3d at 177-181); Cheeks, 796 F.3d at 206 (quoting Lopez, 96 F. Supp. 3d at 177) (noting judicial approval of settlements is necessary to prevent "'highly restrictive confidentiality provisions…in strong tension with the remedial purposes of the FLSA'"); Cortes v. New Creators, Inc., 2016 WL 3455383, at *4 (S.D.N.Y. June 20, 2016) (citing Lopez, 96 F. Supp. 3d at 177-181).

**The Court Should Approve the Requested Attorneys' Fees and Costs as Reasonable**

In addition to assessing the reasonableness of the settlement award, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." Velasquez v. SAFI-G, Inc., 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing Wolinsky, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in FLSA settlements, it is "to ensure that the interest of plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the

clients." Lliguichuzhca v. Cinema 60, LLC, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing Wolinsky, 900 F. Supp. 2d at 336).

In this case, the portion of the settlement amount attributable to attorneys' fees is $14,471.67, or 1/3 or the net settlement amount after deducting for litigation costs. Plaintiff's counsel's request that the Court approve fees of 1/3 of the settlement is "consistent with the trend in this Circuit." Tiro v. Public House Investments, LLC, 2013 WL 4830949, at *14 (S.D.N.Y. Sept. 10, 2013) (collecting cases); Kochilas v. Nat'l Merchant Servs., Inc., 2015 WL 5821631, at *8 (E.D.N.Y. Oct. 2, 2015) (collecting cases). Courts in this Circuit routinely approve attorney's fees awards in the amount of one-third of the total settlement. See McDaniel v. City of Schenectady, 595 F.3d 411, 417 (2d Cir. 2010) (noting that the percentage of recovery method is "the trend in this Circuit."); see also Meza v. 317 Amsterdam Corp., 2015 WL 9161791, at *2 (S.D.N.Y. Dec 14, 2015) ("[C]ourts regularly approve attorney's fees of one-third of the settlement amount in FLSA cases.") (collecting cases); Cregg v. Firstservice Residential N.Y., Inc., Docket No. 15-cv-3876-LB, D.E. 14 at *4-5 (E.D.N.Y. Dec. 09, 2015) (approving one-third attorneys' fees award as "the norm in this Circuit"); Najera v. Royal Bedding Co., LLC, 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (collecting cases); Calle v. Elite Specialty Coatings Plus, Inc., 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("[O]ne-third contingency fee is a commonly accepted fee in this Circuit."); Rangel v. 639 Grand St. Meat & Produce Corp., 2013 WL 5308277, at *1 (E.D.N.Y. Sept. 19, 2013) (observing that in FLSA cases, district courts in the Second Circuit routinely approve of fees that amount to one-third of the total recovery, plus costs). Thus, a one-third recovery is appropriate in a case where, as here, Plaintiff's counsel's fee entitlement is entirely contingent upon success of a settlement or award. See Massiah v. MetroPlus Health Plan, Inc., 2012 WL 5874655, at *8 (S.D.N.Y. Nov. 20, 2012) (collecting cases) (one-third recovery is "presumptively reasonable" where "Counsel's fee entitlement is entirely contingent upon success").

Additionally, the reasonableness of the fee for which approval is requested here is further solidified by "[a]pplying the lodestar method as a cross check." Guaman v. Ajna-Bar NYC, 2013 WL 445896, at *1 (S.D.N.Y. Feb. 5, 2013) (citing Goldberger v. Integrated Resources, Inc., 209 F.3d 43, 50 (2d Cir. 2000)). In order to calculate the lodestar check, the Firm multiplied the attorney hours spent on the case by each individual's reasonable hourly rate. See Healey v. Leavitt, 485 F.3d 63, 71 (2d Cir. 2007).

Here, the Law Office of Peter A. Romero PLLC is a boutique employment litigation law firm, located at 825 Veterans Highway, Suite B, Hauppauge, New York 11788, with a substantial practice primarily representing plaintiffs in wage and hour matters, including individual, collective action and class action matters, and employment discrimination matters in both state and federal court.

With respect to Peter A. Romero, Esq.'s experience, Mr. Romero graduated from St. John's University School of Law in 2003. He was admitted to practice in New York in November 2003, the United States District Court for the Southern District of New York in August 2004, and the United States District Court for the Eastern District of New York in October 2004. Mr. Romero previously worked for a prominent employment law litigation firm as an associate from July 2004 until January 2009 and as a partner from January 2009

until June 2015. Thereafter, beginning in June 2015 through the present, Mr. Romero has operated his own employment law litigation firm, the Law Office of Peter A. Romero PLLC, as its principle. That firm employs one senior associate, the undersigned, David D. Barnhorn, Esq., and a paralegal, as well as other support staff as needed. Throughout his legal career, beginning in July 2004 through the present, Mr. Romero has focused his practice almost entirely on employment law litigation, where a majority of his cases have been comprised of individual, collective action and class action wage and hour lawsuits in federal and New York courts. Indeed, Mr. Romero has been appointed as Class Counsel in numerous class action cases in federal and New York courts. Moreover, throughout his career, Mr. Romero has conducted numerous trials and arbitrations on behalf of his clients in employment law disputes, including wage and hour matters. Finally, while employed as a partner at another employment law litigation firm from January 2009 until June 2015, Mr. Romero was responsible not only for his own case load of employment law litigation matters, but also for supervising and revising and approving the work of four associates who each had their own case load of employment law litigation matters, including wage and hour matters. Mr. Romero is also an active member of the National Employment Lawyers Association, an entity that focuses on employee rights in the workplace and whose membership consists of lawyers that primarily, or exclusively, represent employees.

The undersigned, David D. Barnhorn, Esq., graduated *cum laude* from Hofstra University Maurice A. Deane School of Law in November 2012. I was admitted to practice in New Jersey and the United States District Court for the District of New Jersey in 2012, in New York State in 2013, and the United States District Courts for the Eastern and Southern Districts of New York in 2014. I have been employed as a senior associate for this Firm since April 2018. Prior to joining this firm, I worked as an associate at two prominent employment law litigation firms from November 2012 until April 2018. Throughout my legal career, beginning in November 2012 through the present, I have focused my practice almost entirely on employment law litigation, where a majority of my cases have been comprised of individual, collective action and class action wage and hour lawsuits in New York and New Jersey state and federal courts. Additionally, the undersigned was appointed as Class Counsel in the wage and hour matter of Reyes v. Pisticci Restaurant Corp., Docket No. 17-cv-2869 (JGK) (S.D.N.Y. Jan. 14, 2019) (See D.E. 95, 97). Throughout my time as an associate, I have been responsible for actively handling and maintaining a case load of between 30 to 45 cases at any given time in pre-litigation stages, arbitration, administrative agencies and in litigation in state and federal courts from their inception through trial, appeal and resolution. Moreover, during my career, I have conducted numerous trials and arbitrations on behalf of my clients in employment law disputes, including wage and hour matters. Finally, I have been selected as a Rising Star by Super Lawyers as an "Employment & Labor Attorney" for the years 2016, 2017 and 2018.

Here, if Plaintiff's counsel were seeking fees pursuant to the lodestar, Plaintiff would seek hourly rates of $400.00 per hour for Peter A. Romero, Esq. and $275.00 per hour for the undersigned, David D. Barnhorn, Esq. "A reasonable hourly rate is 'the rate a paying client would be willing to pay,' 'bear[ing] in mind that a reasonable paying client wishes to spend the minimum necessary to litigate the case effectively.'" Spain v. Kinder Stuff 2010 LLC, 2015 WL 5772190, at *8 (E.D.N.Y. Sept. 29, 2015) (quoting Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cty. of Albany & Albany Cty. Bd. of Elections, 522 F.3d 182, 190 (2d Cir. 2008)). "The reasonable hourly rates should be based on rates prevailing in the

community for similar services of lawyers of reasonably comparable skill, experience, and reputation." Id. (quoting Cruz v. Local Union No. 3 of IBEW, 34 F.3d 1148, 1159 (2d Cir. 1994) (internal quotation marks omitted)).  Here, based on the customary rates charged in this district and the experience of the attorneys responsible for this matter, hourly rates of $400.00 per hour for Mr. Romero and $275.00 per hour for the undersigned are reasonable. Solnin v. Sun Life & Health Ins. Co., 2018 WL 4853046, at *3 (E.D.N.Y. Sept. 28, 2018) (awarding mid-level associate with 5 years of experience a rate of $275 and noting proper rate for senior associates is up to $325 per hour and for experienced partners is between $300-$450 per hour in this district); Hui Lan Weng v. Fancy Lee Sushi Bar & Grill, Inc., 2017 WL 5564892, at *2 (E.D.N.Y. Nov. 3, 2017), report and recommendation adopted, 2017 WL 5564593 (E.D.N.Y. Nov. 18, 2017) (citing Houston v. Cotter, 234 F. Supp. 3d 392, 402 (E.D.N.Y. 2017)) (awarding rates of $270 to $350 to senior associates and noting that "[i]n recent years, courts have approved the following hourly rates for attorneys practicing in the Eastern District of New York: $200 to $450 for partners in law firms, $200 to $325 for senior associates, $100 to $200 for junior associates, and $70 to $100 for paralegals."); Carrasco-Flores v. Comprehensive Health Care & Rehab. Servs., LLC, 2014 WL 4954629, at *9 (E.D.N.Y. Oct. 2, 2014) (citing Man Wei Shiu v. New Peking Taste, Inc., 2013 WL 2351370, at *13 (E.D.N.Y. May 28, 2013)) ("Recent decisions in the Eastern District of New York have determined that reasonable hourly rates in FLSA cases are approximately $300-$450 for partners, $200-$325 for senior associates, $100-$200 for junior associates, and $60-80 for legal support staff."); Small v. New York City Transit Auth., 2014 WL 1236619, at *5 (E.D.N.Y. Mar. 25, 2014) (citing Struthers v. City of New York, 2013 WL 5407221, at *7 (E.D.N.Y. 2013)) (recognizing rates of $300-$450 per hour for partners, $200-$300 per hour for senior associates, and $100-$200 per hour for junior associates); Hilton v. Int'l Perfume Palace, Inc., 2013 WL 5676582, at *11 (E.D.N.Y. Oct. 17, 2013) (district court adopting report and recommendation that held that "that partners and counsel be compensated at the rate of $450.00 per hour, mid-level associates be compensated at the rate of $325.00 per hour, junior associates be compensated at the rate of $200.00 per hour, and nonattorney [sic] staff be compensated at the rate of $75.00 per hour."); Ferrara v. Prof'l Pavers Corp., 2013 WL 1210522, at *8 (E.D.N.Y. Feb. 15, 2013), report and recommendation adopted, 2013 WL 1212816 (E.D.N.Y. Mar. 23, 2013) (finding hourly rates of $400 for partners, $300 for senior associates, and $200 for junior associates).

Here, Plaintiff's counsel investigated the Plaintiff's claims, conducted an in-depth and detailed inquiry regarding Plaintiff's job duties, exempt status, his work hours and compensation received, commenced this action, exchanged document discovery, created a detailed assessment of Plaintiff's damages, attended a mediation, and negotiated a settlement. Due to the contingent nature of the case, Plaintiff's counsel undertook these efforts with no ultimate guarantee of compensation.  Plaintiff's counsel was zealous in the pursuit of Plaintiff's litigation objectives and secured a favorable result on the Plaintiff's behalf.  The settlement will be made available to the Plaintiff without the uncertainty and delay of trial.

As a result, the Firm expended a total of 29.5 hours on this matter, as evidenced by counsel's contemporaneously-kept billing records, which are annexed hereto as Exhibit B. Thus, Plaintiff's attorneys' fees in this matter, when calculated pursuant to the lodestar,

amount to $7,857.50.[3]  Here, although Plaintiff's lodestar is less than the amount of fees requested under the standard contingency fee method, Plaintiff's counsel's requested fees are well within the range approved by courts when applying a moderate lodestar multiplier.

Where, as here, the lodestar is less than the contingency fee requested, after reviewing the lodestar the Court generally also applies a multiplier to take into account the contingent nature of the fee, the risks of non-payment, the quality of representation, and the results achieved. See In re Platinum & Palladium Commodities Litig., 2015 WL 4560206 (S.D.N.Y. July 7, 2015).  Moreover, a multiplier is used in order to compensate Plaintiff's counsel for time that is required administering the settlement. See Willix v. Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011); Zeltser v. Merrill Lynch & Co., 2014 WL 4816134, at *10 (S.D.N.Y. Sept. 23, 2014).  Courts have awarded multipliers up to eight (8) times the lodestar and in some cases they have awarded multipliers that are even higher. See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 481-482 (S.D.N.Y. 2013) (collecting cases); Zeltser, 2014 WL 4816134, at *9 (collecting cases); see also Riveras v. Bilboa Rest. Corp., Docket No. 17-cv-04430 (S.D.N.Y. Dec. 14, 2018) (See DE 74) (Memorandum and Order approving a lodestar multiplier of 6.7).  Here, the multiplier requested is approximately 1.84, which is well within the range granted by courts in this circuit.

While the multiplier represents a greater recovery than Plaintiff's counsel's lodestar, this should not result in penalizing counsel for achieving an early settlement. See Zeltser, 2014 WL 4816134, at *10 (citing Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 121 (2d Cir. 2005)) ("[T]he lodestar create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits."); Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1050 n.5 (9th Cir. 2002) (noting that "the lodestar method does not reward early settlement" and that "counsel should [not] necessarily receive a lesser fee for settling a case quickly"); Beckman, 293 F.R.D. at 482 (noting applying multiplier is proper as achieving an early settlement "should not result in penalizing plaintiffs' counsel"); see also Zeltser, 2014 WL 4816134, at *8 (quoting Sand v. Greenberg, 2010 WL 69359, at *3 (S.D.N.Y. Jan. 7, 2010); and citing Reyes v. Altamarea Grp., LLC, 2011 WL 4599822, at *1 (S.D.N.Y. Aug. 16, 2011)) ("Fee awards in wage and hour cases are meant to 'encourage members of the bar to provide legal services to those whose wage claims might otherwise be too small to justify the retention of able, legal counsel.'" and "The FLSA and state wage and hour statutes are remedial statutes, the purposes of which are served by adequately compensating attorneys who protect wage and hour rights.").

Lastly, the Court should review the public policy considerations concerning the manner in which attorneys' fees are assessed.  Since a reasonable value of the case had already been obtained in a settlement, the only purpose of continuing this litigation would have been to build up attorneys' fees.  This would forestall a resolution that could have been achieved earlier.  While the undersigned would never continue with a case to build up fees beyond the point where a reasonable settlement is reached, other attorneys who do wage-and-hour litigation very well might.  Reducing attorneys' fees in single plaintiff FLSA cases below one third would disincentivize early resolution of these cases.  As FLSA cases have become a

---

[3] Notably, Plaintiff's counsel has not sought reimbursement for time spent on this matter by their paralegal, which would increase this lodestar sum even further if her time were included.

significant portion of the federal docket, the efficient and early resolution of these cases is in the best interests of public policy. Thus, the amount of attorneys' fees sought – $14,471.67 – is a reasonable fee in this action.

Lastly, Plaintiff's counsel seeks reimbursement for $1,585.00 in advanced litigation costs. The following is a description of the costs incurred in this lawsuit:

| **Date** | **Description of Expense** | **Amount** |
|---|---|---|
| 12/11/2018 | Filing Fee for Complaint, D.E. 1 | $400.00 |
| 12/28/2018 | Fees for Service of Process on all Defendants | $135.00 |
| 5/6/2019 | Mediator's Fees (Plaintiff's Portion) | $500.00 |
| 5/6/2019 | Translator's Fees at Mediation | $550.00 |
|  |  | **Total:** $1,585.00 |

Copies of invoices for these expenses are annexed as Exhibit C.

Accordingly, Plaintiff's counsel's requests for attorneys' fees in the amount of $14,471.67 and expenses in the amount of $1,585.00 should be approved as reasonable.

In light of the foregoing, the parties respectfully request that the Court approve their settlement and dismiss this matter with prejudice, while maintaining jurisdiction to enforce the terms of the settlement. The Parties have submitted a copy of a Proposed Stipulation and Order of Dismissal with Prejudice with their Settlement Agreement.

Respectfully submitted,

*David Barnhorn*

_____
DAVID D. BARNHORN, ESQ.

C:  All Counsel of Record *via* ECF